IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

— — — — — — — — — — — — — — — — — X

Kenneth Garcia,
            Plaintiff,

                    V.

(Warden) Nannette F. Barnes,
in her individual & official Capacity,
(Assistant Warden of health care) Ms. Benson,
in her individual & official Capacity,
(Lieutenant) Lugo,
in his individual & official Capacity,,
(officer) D. Taylor,
in his individual & official Capacity,
(officer) C. Leary
in his individual & official Capacity,
(officer) T. Oxidon
in his individual & official Capacity,
(officer) Thompson,
in his individual & official Capacity
(officer) Johnson,
in his individual & official Capacity,
            Defendant(s)

— — — — — — — — — — — — — — — — X

RECEIVED USDC
CLERK, CHARLESTON. SC
2023 MAY -8 PM 2:51

CIVIL ACTION NO. ____

9:23-cv-01877-SAL-MHC

ComplainT

(Jury Trial Demanded)

## I. JURISDICTION & VENUE

1. Comes Now, Kenneth Garcia (The above named plaintiff) proceeding pro se before this honorable court and "respectfully" submits This civil action (Bivens) complaint which arises pursuant to a Federal Question and is brought to remedy the deprivation of rights and privileges secured by the constitution of The united states. This court has jurisdiction over this action pursuant to Title 28 U.S.C section 1331 & 1343(3) and 1367. plaintiff seeks money Damages by way of Compensat due to his injuries and The effect that said injuries has had on his Life.

2. The District of South Carolina (Florence division) is

an appropriate venue under 28 U.S.C. ₹ 1391 (b)(2) because it is where the events giving rise to the claims asserted in this complaint occurred.

## II. PLAINTIFF

3. Plaintiff Kenneth Garcia, is presently confined within the federal Bureau of Prisons at "USP Coleman # 1, Federal Correctional Complex - USP 1, P.O. Box 1033, Coleman, F.L 33521" and was previously detained in the Bennettsville Federal institution (F.C.I Bennettsville) A meduim Security Federal correctional institution Located at "696 Muckerman Rd. Bennettsville, South Carolina 29512", within The district of South Carolina.

## III. DEFENDANTS

4. Defendant, Nannette F. Barnes is The (warden) of FCI Bennettsville. She is Legally responsible for the operation of FCI Bennettsville and for the welfare of all the inmates in that prison.

5. Defendants, Benson, Lugo, Taylor, Leary, Oxidon, Thompson and Johnson are all employee's and/or correctional officers

- 2 -

OF The — at all Times mentioned in This Complaint, held The rank of either officer, Lieutenant, Assistant warden of medical health services and was assigned To F.C.I Bennettsville.

6. Each defendant is sued individually and in his or her official Capacity. AT all Times Relevant herein, defendants were acting under color of Law to deprive plaintiff of his constitutional rights, as set Forth more fully below.

## IV. FACTS

7. Plaintiff asserts that on 4/10/20 aT approx 3:20 PM, while asleep in his bed, in his designated cell (222 in Unit A-1) officer Taylor, phycologist mr. Anderson and other officers opened his cell door and entered his room.

8. plaintiff was asked to sit up which he complied.

9. plaintiff was then asked if he had been drinking because the room smelled like alcohol at which time plaintiff responded with honesty stating that yes he had a Few drinks earlier and was just Laying down getting some rest.

— 3 —

10. AT That moment plaintiff was then asked to get up and go with Them which plaintiff complied.

11. AT The door plaintiff was then told to Turn around and place his hands behind his back which again he complied.

12. plaintiff was then handcuffed "behind his back" and escorted from his cell downstairs by officer D. Taylor and DR. Anderson.

13. Once downstairs I was escorted out of the unit and passed off To officer C. Leary who proceeded To escorT plaintiff To SHU (special Housing unit) which is where inmates are housed awaiting a disciplinary hearing for an alleged violation of a prison rule.

14. However, while officer C. Leary was escorting Plaintiff to the SHU he began To verbally disrespect plaintiff in a very hostile and unproffessional manner, then out of nowhere officer Leary slammed plaintiff really hard on the pavement by grabbing the cuffs with one hand and sweeping plaintiffs Feet (in one motion) which caused plaintiff to go up in the air and Fall really hard on his chest and Face.

– 4 –

15. plaintiff could not stop The fall as plaintiff was handcuffed (restrained) behind his back and therefore had to try and minimize the impact by using his chest to avoid any serious damage To his face.

16. Once plaintiff was on The floor (facedown) officer Leary began To Knee and hit plaintiff in his back, arms, ribs and legs.

17. soon after other officers came to the scene and joined in on the brutal assualt by Kicking plaintiff multiple times in his back, ribs, arms and legs.

18. AT this point plaintiff desperately pleaded with them to stop and tried to cover up and get away by using his free legs To No AvaiL.

19. officers Then began to stomp on plaintiffs Legs and feet extremely hard and then cuffed plaintiffs feet with leg restraints so That plaintiff could not get away.

20. once plaintiff's feet were restrained and completely immobilized the brutal assualt continued with more Knees, punches and Kicks untill finally plaintiff blacked out and went unconcious

21. AFter this plaintiff woke up on The floor in SHU, soaked in his own urine with officers Johnson, Leary, T. oxidon, LT. Lugo and others all standing above him Laughing.

22. It was only Through serval inmate eye witnesses who seen The entire incidenT Through There cell Windows That plaintiff found out what had occurred From The Time he passed out untill he awoke on the Floor in SHU full of urine - stating how when plaintiff went unconcious he was Then Lifted and carried by serval officers for a partial of the way To SHU, Then placed in a restrain chair and dragged The rest of the way.

23. For The record plaintiff herein avers that he does in fact have permanent damage on his right fooT due to this assualt as well as a scar on his LeFt Knee (medical records will in fact confirm his injuries); on going complications, severe nerve damage and Constant pain on plaintiffs right fooT.

24. Soon after plaintiff's admission in SHU (During The day shift, on C-LoweR) officer Thompson while Conducting his rounds.

- 6 -

had stopped in front of my cell and stated To me, "so your the asshole who pissed all over himself and started Laughing. This was said on The range for all the other inmates could hear. I told him not to disrespect me in That manner, at which time officer Thompson told me to shut my dumb ass up and That iF I think I'm tuff he will come in There and kick my ass!

25. On another occassion while I was housed on B-lower, officer Thompson along with 2 other officers (upon information and belief, officer Jacobs & Davis) were "yelling" racial remarks in front of The range about hispanics, stating how we are all punk bitches, dumb spicks, etc.

26. also on another morning while asleep in my bed, me and my roomate were awaken to our toilet exploding with urine and feces shooting all over The place. The toilet continued To overflow. we then got up and pushed The emergency button for assistance, which is when officer Thompson along with officer single terry came to our cell. we showed Them what was happening at which time officer Thompson re-sponded by laughing, Then stated "yea okay" as he walked away, leaving us there for hours in a room full of urine and feces. we continued To push The emergency button because it would not stop and we could not breathe. when

Thompson came around again we asked him to please put us in another cell because this was unsanitary and inhumane and we could not breathe. officer Thompson stated how he didnT give a shit and its not when we say we move, its when he saids (please be aware that there was an empty cell right in front of our currenT cell). officer Thompson Maliciously Left us in That disgusting cell "for hours". we did not eat any lunch and it wasn't untill the next shift that we were finally moved to another cell (The cell that was vacant in front).

27. officer Taylor who was the officer who arrived with The plumbing crew that day could not believe The mess or how they left us in there. I told him that I was reporting officers Thompson's conduct and he stated, if I were you I would do the same thing. (BoTh me and my roomate filed formal Complaints ¿ON This matter

28. officeR Thompson's conduct was on going Throughout my 1 month stay in SHU, consisting of constant disrespecT, verbal abuse, racial slander and degragation of inmates race & characther (Many ComplainTs have been filed about his conduct)

29. On 6/19/2020 at approx 7:38ᴾᴹ at night I was Taken out of my cell by officer Johnson, shu LT. Lopez and officeR t.oxidon aT

- 8 -

which was intentional to my bodily harm, my personal property and legal documents were trashed (thrown away) by officer Johnson and T. Oxidon. I was also left "Naked" in a cell <u>for</u> <u>hours</u>, Then placed on "paper clothing" and put in a <u>freezing</u> hard cell <u>for days</u> without probable <u>cause</u>. (For the record B.O.P policy prohibits officers To place inmates in paper clothing without The proper consent & Authorization); B.O.P policy 5270.11 (conditions of confindment in The shu 541.31, section c) states: The Warden's written approval is required prior to placing an inmate on alternate clothing/Linen status. The Warden or acting warden may not delegate The authority to place an inmate in alternate clothing/Linen (e.g. paper), The memorandum <u>must</u> include, at a minimum, The signature of The warden, Health Services administrator and a psychologist. A written explanation of The reason(s) for alternate clothing/Linen status must be included in The warden's authorization. This status will be reviewed every 3 days. Inmates <u>must</u> be offered a change of clothing dailey and the clothing must be adequate to The Temperature in The SHU.

30. Officer Johnson and officer T. Oxidon had no authorization To place plaintiff on

alternate clothing/Linen status (e.g. paper) nor was plaintiff ever given any clothing exchange for the entire 3 days. Also the room in which plaintiff was placed was a "hard cell" which is a freezing cell used to punish inmates, whereas, this room was not of adequate temperature for paper clothing status.

31. officer(s) Johnson and T. Oxidon's actions that night were motivated with the intent to unlawfully punish, torture and cause plaintiff unwanted pain and suffering (plaintiff also filed a grievance/complaint on this matter).

32. on other occassions officer Johnson would come on the range serving us our food, during friday's on fish days and state... Here goes your Lunch guys, smells just Like your mothers cunts!

33. officers Johnson and T. Oxidons harsh and degrading treatment towards plaintiff and others continued, including physical assaults which both defendants have been investigated for on numerous occassions

-10-

34. plaintiff's incoming and outgoing mail would many Times come up missing, mail would not go out. Serval times The plaintiff's mail was purposely given to other inmates. plaintiff and others would have to wait for Certain officers to work in order to get our mail out safe (such as officer RAY and officer Smith, whom were both aware of the issues concerning The mail).

35. plaintiff did in fact bring all these issues To The shu Lieutenant (LT. Lugo) whom was in charge of SHU and The operations Therein, but he would turn a blind eye and allow the mistreatment of inmates to continue.

36. on one occassion plaintiff had expressed to LT. Lugo That he wanted to get The video footage from the day he was beaten when he first arrived to SHU and LT. Lugo smirked and simply stated ... "good luck with that". when plaintiff asked LT. Lugo what he meant by That he stated ... "Lets just say That tape is gone".

-11-

37. LT. Lugo also stated to me that he found it hilarious how I was on the floor like a fish screaming ... I'm drowning, I'm drowning, I can't breatHe, I can't breaTHe (e.g. LT. Lugo found it amusing how I was unconcious, squirming like a fish, unable to breathe as I screamed I was drowning, I can't breathe due to the BrutaL beating I had just endured at the hands of C. Leary and others).

38. LT. Lugo was also the subject oF an sis investigation (during my 7 month stay in shu) where another inmate was attacked and assaulted by an officer while he stood by and observed the entire incident, failing to properly supervise and intervene in a timely manner.

39. plaintiff was also denied his "mandated" (per doctors) medication, treatment and medical equipment for his medical Condition, which caused plaintiff many sleepless nights, extreme chest pain and Respiratory Complicia-Tions the entire time in shu.

40. plaintiff filed complaints and also spoke To medical personnel, Doctor O and to

-12-

assistant Warden Ms. Benson whom is in charge of health care and services (all to no avail).

41. I spoke to ms. Benson "numerous times" about my medical issues and about my medication/medical equipment that I needed to keep me stabilized and pain free, also about the pain in my right foot which I had sustained from the assault

42. assistant warden Benson ensured me "multiple times" that she would handle it and personally make sure I get treated. she would tell me this every time I seen her but months continued to pass and plaintiff was never medicated or treated for his injuries nor for his medical condition despite the fact That plaintiff produced his medical papers which clearly state his condition as well as the medical equipment he needs and is entitled to (all which is also extensively documented within his medical Records).

43. SHU LT. Lopez also sent several E-mails To medical concerning my medical needs but I continued To get denied medical attention.

-13-

44. plaintiff also filed a formal Complaint with SIS (investigations unit) about staff misconduct and was seen by SIS winson concerning officer Johnson, officer Thompson and others who were abusing inmates in SHU. SIS winson was interested in allegations and abuse regarding Johnson and Thompson whom have been The Subjects of numerous complaints and assualts (especially officer Johnson).

45. plaintiff also submitted serval grievances To warden Barnes and also spoke to her personally "many times" during weekly SHU rounds about my medical issues and about The constant abuse by these officers and others but no action was Taken by warden Barnes and The officers abuse and Medical Neglect continued despite her Knowledge and awareness of These conditions.

46. This has all caused plaintiff extreme hardship on his life, pain and suffering, mental anguish and emotional distress, as well as on going pain, complications in plaintiffs right foot where he now needs To undergo physical Therapy, Take medications, wair special medical shoes and use a cane when walking To minamize The pain. These injuries have restricted plaintiff of basic activities such as sports, excersize or walking for To long.

-14-

# V. EXHAUSTION OF LEGAL REMEDIES

47. Plaintiff has exhausted all administrative remedies available to him in the Bureau of prisons (B.O.P) remedy program, and any administrative remedies unexhausted have been specifically denied plaintiff by Defendants.

# VI. LEGAL CLAIMS

48. Plaintiff realleges and incorporates by reference paragraphs 1 - 47 that unless otherwise stated, the following legal claims are undisputed.

49. While plaintiff was incarcerated at FCI Bennittsville he was subjected to A physical assault, as well as to harassment while in shu by Defendants including the following:

a. Humiliation / inhumane conditions

b. medical Neglect

c. Racial Discrimination

d. Constant verbal and mental Abuse

50. The more pro voked, unlawful beating, deliberate indifference to plaintiff's medical needs, humiliation, discrimination and constant harassment violated plaintiff Kenneth Garcia's rights and Constituted cruel and unusual punishment under the 8th amendment of the United States.

51. The plaintiff has no plain, adequate or complete remedy at Law to redress the wrongs described herein. plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this Court grants the relief which plaintiff seeks.

52. plaintiff can and will establish (1) The Challenged actions occurred "under color of Law" (2) The actions are a deprivation of Constitutional right or a federal Statutory right.

53. plaintiff "respectfully" submits this claim of cruel and unusual punishment in violation of The 8th amendment of the United States, where after being taken out of his Living Quarters and while being escorted to the SHU officer C. Leary illegally and Maliciously slammed plaintiff on the ground, without probable cause and while plaintiff was already restrained (handcuffed behind his back). Then commenced to beat on plaintiff with punches and Knees. Soon after others joined in on the beating which left

-16-

The plaintiff with severe damage on right foot and scar on left Knee. The plaintiff was brutally beaten untill he went unconscious and then after awoke (soaked in his own urine) in SHU with officer Johnson, officer T. Oxidon, officer C. Leary, LT. Lugo and others all standing above him Laughing. "please Keep in mind that servaL factors should be balanced in determining whether prison officials acted maliciously and Sadistically. The facTors include (1) The necessity for the application of force (2) The relationship between the need for force and The amounT of force used (3) The extent of The injury actually inflicted (4) The extent of The threat to The safety of The staff and prisoners, as reasonably perceived by The responsible officials on The basis of the facts Known To Them, and (5) The efforts Taken by The officials, if any, to temper the severity of The force applied".

Here There was no need for The amounT of force used as plaintiff was already subdued (in hand restraints behind his back) which he had already cuffed up volontarilly without giving officers any issue. Plaintiff was not a threat to staff or prisoners and there was no efforts taken by other officers to try and temper the severity of The force applied which caused plaintiff SubsTantial physicaL injury and mentaL/emotionaL Damage

- 17 -

54. Then for approx 7 months, while housed in SHU awaiting transfer plaintiff was subjected to racial discrimination, humiliation, constant verbal abuse and mistreatment. plaintiff was also denied medical attention and treatment despite this being on his medical record and mandated by outside doctors.

55. plaintiff received none of the following: (1) medication, (2) medical equipment or (3) medical attention for the injuries he sustained from The assault despite numerous request, complaints and grievances to medical staff, SHU LT. Lugo, Warden Barnes, assistant Warden Benson and SIS (A supervisor can also be held Liable where (1) The Supervisor had actual or Constructive Knowledge That his Subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to another, (2) The Supervisor's response to The Knowledge was so inadequate as to show deliberate indifference to or tacit authorization of The alleged offensive practices, and (3) There was an affirmative causal Link between the Supervisor's inaction and The particular Constitutional injury suffered by the plaintiff).

Here, Warden Barnes, assistant Warden Benson and SHU Lt. Lugo all were aware of the assault and on going abuse by officers Thompson, Johnson and T.Oxidon in shu, as well as plaintiff's medical needs, but disregarded plaintiff's multiple complaints and pleas

56. Defendants knew of and disregarded a substantial risk of serious harm to plaintiff's physical, medical and mental health.

57. By depriving plaintiff of administrative remedies, Defendants have imposed conditions on plaintiff that have caused him serious mental and physical health problems.

58. The Defendants above-described actions and omissions were undertaken with malice and/or reckless disregard for plaintiff's Constitutional rights.

59. The actions of the defendants were the direct and proximate cause of the violations of plaintiffs constitutional rights and of the damages suffered by Plaintiff, including bodily injury, pain and suffering, emotional distress, mental anguish and humiliation.

-19-

60. plaintiff also intends to introduce compelling evidence at trial from first hand eye witnesses, Doctors, medical personnel, phycologist, officers and other victims who also suffered at the hands of These defendants; as well as documentation pertaining to plaintiff's medical condition, status, injuries, mandates, etc; Including but not Limited to complaints, grievances and investigations regarding defendants actions described herein" and on other matters (Also documents in which officer Taylor falsified in order to cover up the malicious beating on plaintiff).

61. Additionally, plaintiff will also submit a claim of conspiracy in which is also supported by the pattern of illegal misconduct by defendants towards inmates on record. Continuing to repeat the exact same conduct (and then going as far as to falsify documents to cover up The illegalities as officer Taylor did) can only make reference to a collective agreement to do so. This claim would in turn prevent the continued abuse and violations of others constitutional rights by These defendants

-20-

## VIII. PRAYER FOR RELIEF

Wherefore, plaintiff Kenneth Garcia respectfully prays that this Honorable Court enter judgment granting plaintiff :

62. Compensatory damages in the amount of $250,000 U.S Dollers against each defendant, jointly and severally.

63. punitive damages in the amount of $300,000 against each defendant.

64. A jury trial on all issues triable by jury.

65. plaintiff's cost in this suit.

66. The right to amend this Complaint due to the time constraints and the lack of Legal Knowledge, as a pro se Litigant.

67. The right to file a addendum to add additional plaintiff's that may want to join this suit as they were also directly involved (in part) in the constitutional violations, as well as permission to add additional defendants whoms names and title are unknown to plaintiff at the moment.

68. Any additional relief this court deems just, proper and equitable.

Respectfully Submitted

Kenneth Garcia

Dated 2/16/2023

Kenneth Garcia #91977-054
USP Coleman #1
PO Box 1033
Coleman, Florida 33521

-21-

## Verification

Pursuant to 28 U.S.C § 1746, I, Kenneth Garcia, declare and verify, under penalty of perjury, under the laws of The United States of America, that the foregoing is True and correct To The best of my Knowledge and belief.

Dated this __16th__ day of __february__, 2023

Kenneth Garcia # 91977-054
Federal Correctional Complex
USP # 1
P.O. Box 1033
Coleman, Florida 33521

- 22 -